Jesse K. Fishman (7-5485)
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
jfishman@hkm.com
*Attorney for Plaintiff Linda Knutson*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| LINDA KNUTSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) |
| MEMORIAL HOSPITAL OF LARAMIE COUNTY d/b/a CHEYENNE REGIONAL MEDICAL CENTER a/k/a THE BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF LARAMIE COUNTY d/b/a CHEYENNE REGIONAL MEDICAL CENTER | ) ) ) ) ) ) ) ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Linda Knutson, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint against Memorial Hospital of Laramie County d/b/a Cheyenne Regional Medical Center a/k/a The Board of Trustees of Memorial Hospital of Laramie County d/b/a Cheyenne Regional Medical Center ("Defendant" or "CRMC") states and alleges as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward, and wrongful termination of Plaintiff because Plaintiff

suffers from one or more disabilities, in violation of the Americans with Disabilities Act ("ADA"), and the Wyoming Fair Employment Practices Act ("WFEP").

2. Plaintiff has a disability and/or perceived disability under the ADA and the WFEP.

3. On or about September 29, 2014, Ms. Knutson informed CRMC that she has a disability (i.e. learning disabilities, including dyslexia, anxiety disorder, and related symptoms), and requested accommodations related to same.

4. As instructed by CRMC, Ms. Knutson was evaluated by a doctor to address her medical restrictions. And, on or about October 20, 2014, Ms. Knutson provided to CRMC a note from a Board-Certified Clinical Psychologist in Cheyenne, Wyoming addressing Ms. Knutson's limitations and suggesting potential reasonable accommodations.

5. On or about November 4, 2014, without having engaged in any discussion with Ms. Knutson about her disability, medical restrictions, or potential accommodations, Ms. Knutson received a letter informing her that Defendant had terminated her employment.

## PARTIES

6. Plaintiff is, and at all times relevant to this Complaint was, a resident of Wyoming.

7. Defendant Memorial Hospital of Laramie County d/b/a Cheyenne Regional Medical Center a/k/a The Board of Trustees of Memorial Hospital of Laramie County d/b/a Cheyenne Regional Medical Center ("CRMC" or "Defendant") is a Wyoming county hospital, incorporated pursuant to W.S. § 18-8-101 *et seq.*, and with a principal office address of 214 E. 23rd Street, Cheyenne, Wyoming 82001.

8. CRMC's governing body is the Defendant Board of Directors (also known as the Board of Trustees), whose members are appointed by the Board of County Commissioners for Laramie County.

9. CRMC is a governmental entity as defined in Wyoming statutes.

10. At all relevant times, CRMC was Ms. Knutson's "employer" within the meaning of the Americans with Disabilities Act, and the Wyoming Fair Employment Practices Act.

11. Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that Defendant has 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

12. Defendant is an employer within the meaning of the W.S. § 27-9-102, in that Defendant employs two (2) or more employees within the state.

13. At all relevant times, Defendant was Plaintiff's employer within the meaning of the ADA and the WFEP.

## JURISDICTION AND VENUE

14. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

15. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claim is so related to the federal claims that they form part of the same case or controversy.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

17. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

18. Plaintiff filed her Charge of Discrimination – WFEP No. 5-2015, EEOC No. 32K-

2015-00043, and D.J. No.: 205-87-1 – with the Equal Employment Opportunity Commission; the Wyoming Department of Workforce Services; the Cheyenne Labor Board; and the Disability Rights Section, Civil Rights Division, United States Department of Justice for disability discrimination, failure to accommodate, retaliation, and unlawful termination on or about January 15, 2015.  Plaintiff received a determination in her favor in regarding disability discrimination, failure to accommodate, and wrongful termination on March 17, 2017.  Plaintiff was issued a Notice of Right to Sue with Respect to EEOC No. 32K-2015-00043 pursuant to 42 U.S.C. § 2000e-5(f)(1) on February 19, 2021.  Plaintiff filed the present action within ninety (90) days of receipt of same.

19. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

21. On or about July 30, 2012, Ms. Knutson began working for CRMC as a Tray Line Associate through a contract employment service.

22. Ms. Knutson worked hard, and soon earned a position as an employee of CRMC.

23. On or about September 24, 2013, Ms. Knutson was offered and accepted a full-time Tray Line Associate Position.

24. On or about October 7, 2012, Ms. Knutson became an employee of CRMC, working as a Tray Line Associate, where she worked until her unlawful termination on November 4, 2014.

25. Prior to informing CRMC about her disability, Ms. Knutson received high ratings in her performance reviews.  On or about September 17, 2013, for example, Ms. Knutson earned

an overall score of 4.6 out of 5.0. Further, Katy Guengerich (Ms. Knutson's then-supervisor) stated: "Linda does an excellent job assisting with food preparations. She stocks and maintains patient line as needed and helps with any additional side duties[.]"

26. In or around 2013, Ms. Knutson disclosed to the Defendant that she has a learning disability, as she was having difficulties with items in the regularly-scheduled testing underwent by Tray Line Associates.

27. In 2014, due to a number of traumas, the symptoms of her disabilities increased. The following are a few but not a complete list of the traumas she experienced in 2014:

    (a) In or about April 2014, Ms. Knutson's mother passed away. This trauma increased the symptoms of Ms. Knutson's disability as it increased her anxiety.

    (b) In or about April 2014, one of Ms. Knutson's friends and coworkers committed suicide.

    (c) In or around May 2014, Ms. Knutson's mother-in-law passed away.

28. On or about September 29, 2014, Ms. Knutson informed CRMC that she has a disability (i.e. learning disabilities, including dyslexia, anxiety disorder, and related symptoms).

29. On or about October 9, 2014, Joell Austin (HR Generalist at CRMC) asked Ms. Knutson to complete a reasonable accommodation request and to be evaluated by a health care professional.

30. On or about October 16, 2014, Ms. Knutson was evaluated by Steven S. Newman, Psy.D.

31. Dr. Newman prepared a letter regarding Ms. Knutson, dated October 20, 2014.

32. In his letter, Dr. Newman stated that he had the opportunity for a single evaluation of Plaintiff on October 16, 2014, which included a mental status exam with cognitive screening.

He noted that a more definite diagnoses as well as specific recommendations for accommodations would require psychological testing. In the meantime, however, he noted the following:

    (a) Based on her description of learning problems, which included receiving special education for reading, writing, spelling and reading comprehension from fourth through 12th grades, it is likely that Ms. Knutson suffers from a learning disability which affects her reading accuracy, speed and comprehension. This would obviously have a significant impact on her ability to process written information in a timely fashion. Based on interview and screening I believe she also meets criteria for an unspecified anxiety disorder, a condition which likely makes it more difficult for her to process information and achieve accuracy and speed under anxiety-provoking situations.

    (b) So far as I know, there are no current mitigating measures which affect this condition.

    (c) Her condition does appear to affect her ability to perform an essential function of the position, namely, the ability to quickly and accurately comprehend written instructions. This problem is likely to worsen in anxiety-provoking situations.

    (d) Without being familiar with the details of her position and its essential functions, I can predict that it is unlikely she would be able to perform reliably in a fast-paced environment in which accuracy and speed of reading comprehension are both required. If it is possible to slow the pace of work, to allow for checking or rechecking of work by Ms. Knutson in order to ensure accuracy, or if there is an assistive device that would help to ensure accuracy,

then accommodations might be considered. In other words, another position in which health and safety of patients is not at issue, accuracy is less essential, there are fewer time pressures, or less reading is involved, would be a better fit.

(e) This need for accommodation is likely to be permanent.

33. In his letter, Dr. Newman suggests as potential accommodations: slowing the pace of work, allowing for checking or rechecking of work, using an assistive device, and/or transferring Ms. Knutson to a different position. Likewise, Dr. Newman impliedly suggests that reducing anxiety-providing situations could improve Ms. Knutson's performance. [**Exhibit A**, Letter from Dr. Newman].

34. Ms. Knutson promptly provided Dr. Newman's letter to CRMC.

35. Following receipt of Dr. Newman's letter, CRMC engaged in *no discussions* with Ms. Knutson regarding her disability and/or potential accommodations.

36. However, CRMC claims that it "followed a process intended to determine whether she could be accommodated in her position as a Tray Line Associate or any other vacant position."

37. In addition, other reasonable accommodations that were suggested by Dr. Newman and/or Ms. Knutson on or about October 21, 2014 [**Exhibit B**, ADA Paperwork] included the following:

(a) Utilizing a "Smart Pen" to help her read tickets better;

(b) Printing order tickets in a larger font;

(c) Providing Ms. Knutson with additional training on some of the diets;

(d) Allowing Ms. Knutson extra time and/or providing a set schedule and duties for the mornings; and/or

(e) Transferring Ms. Knutson to a position in the sandwich shop, coffee shop, or to

another position.

38. CRMC failed to engage in any discussions with Ms. Knutson regarding the reasonable accommodations proposed by her and/or Dr. Newman.

39. On or about November 4, 2014, without having engaged in any discussion with Ms. Knutson about her disability, medical restrictions, or potential accommodations, Ms. Knutson received a letter informing her that Defendant had terminated her employment as of November 4, 2014.

40. In the termination letter, CRMC states (in pertinent part):

(a) Reading comprehension, and performing accurately in a fast-paced environment, are essential functions of the job of a Tray Line Associate. We cannot alter these requirements in any meaningful way to accommodate your disability without impacting patient safety.

(b) We have also canvassed other positions within Cheyenne Regional to see if there is another position suitable for you. All positions require reading comprehension and recordation of data, and at some level, the performance of these positions all impact patient safety.

(c) As a result of the above concerns, the termination has been approved. Your employment will end November 4, 2014.

**FIRST CLAIM FOR RELIEF**
**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A) Against Defendant)**

41. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

42. Plaintiff is a disabled person within the meaning of the ADA.

43. Plaintiff suffers from dyslexia, anxiety disorder, learning disabilities, and/or other symptoms related to same.

44. Plaintiff worked for Defendant for one and a half to two years, was qualified for her job and capable of performing the essential functions of her position with or without a reasonable accommodation.

45. Plaintiff was regarded as being disabled by Defendant.

46. Defendant denied Plaintiff all of the reasonable accommodations suggested by Dr. Newman and/or Plaintiff: slowing the pace of work, having her work checked or rechecked, using an assistive device, and/or transferring Plaintiff to a different position, as directed by her doctor. The requested reasonable accommodations would not have caused Defendant an undue hardship.

47. Defendant likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA.

48. Instead of engaging in the requisite good faith interactive process, Defendant terminated Plaintiff with no further discussion with Plaintiff about her limitations and/or potential reasonable accommodations.

49. On or about November 4, 2014, Defendant discriminated against Plaintiff by terminating her employment because of Plaintiff's actual and/or perceived disabilities, in violation of the ADA.

50. The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of Plaintiff's disabilities, and/or because of Defendant's denial of Plaintiff's requests for reasonable accommodations based on her disabilities.

51. Defendant's above-described conduct was intentional.

52. Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

53. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

<b><u>SECOND CLAIM FOR RELIEF</u></b>
<b>(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a) Against Defendant)</b>

54. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

55. Since October 2014, Plaintiff made numerous requests for reasonable accommodations related to her disabilities. In doing so, Plaintiff was engaging in activity protected under the ADA.

56. Defendant retaliated against Plaintiff after she engaged in the above-described protected activity.

57. More specifically, Defendant terminated Plaintiff's employment. These consequences are of the type that would tend to discourage similarly situated employees form requesting accommodations and/or complaining about or opposing illegal discrimination.

58. A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e. Defendant discharged Plaintiff because she requested and/or required reasonable accommodations related to her disabling medical condition(s).

59. Defendant's above-described conduct was intentional.

60. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

61. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**THIRD CLAIM FOR RELIEF**
**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of W.S. § 27-9-101 *et seq.*, the Wyoming Fair Employment Practices Act ("WFEP"))**

62. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

63. Plaintiff is a disabled person within the meaning of the ADA.

64. At all times pertinent to the Complaint, Plaintiff was a "qualified disabled person" as that term is defined in W.S. § 27-9-105.

65. Plaintiff suffers from dyslexia, anxiety disorder, learning disabilities, and/or other symptoms related to same.

66. Plaintiff was qualified for her job and capable of performing the essential functions of his position with or without a reasonable accommodation.

67. Plaintiff was regarded as being disabled by Defendant.

68. Defendant denied Plaintiff all of the reasonable accommodations suggested by Dr. Newman and/or Plaintiff: slowing the pace of work, having her work checked or rechecked, using an assistive device, and/or transferring Plaintiff to a different position, as directed by her doctor. The requested reasonable accommodations would not have caused Defendant an undue hardship.

69. Defendant likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations.

70. Instead of engaging in the requisite good faith interactive process, Defendant

terminated Plaintiff with no further discussion with Plaintiff about her limitations and/or potential reasonable accommodations.

71. On or about November 4, 2014, Defendant discriminated against Plaintiff by terminating her employment because of Plaintiff's actual and/or perceived disabilities, in violation of the WFEP.

72. The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of Plaintiff's disabilities, and/or because of Defendant's denial of Plaintiff's requests for reasonable accommodations based on her disabilities.

73. Defendant's above-described conduct was intentional.

74. Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

75. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of the WFEP)

76. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

77. Since October 2014, Plaintiff made numerous requests for reasonable accommodations related to her disabilities. In doing so, Plaintiff was engaging in activity protected under the WFEP.

78. Defendant retaliated against Plaintiff after she engaged in the above-described

protected activity.

79. More specifically, Defendant terminated Plaintiff's employment. These consequences are of the type that would tend to discourage similarly situated employees form requesting accommodations and/or complaining about or opposing illegal discrimination.

80. A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e. Defendant discharged Plaintiff because she requested and/or required reasonable accommodations related to her disabling medical condition(s).

81. Defendant's above-described conduct was intentional.

82. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's legally-protected rights.

83. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Punitive damages as allowed by law;

C. Injunctive relief;

D. Attorneys' fees and costs of this action;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 20th day of May 2021.


**HKM EMPLOYMENT ATTORNEYS LLP**


By: */s/ Jesse K. Fishman*
    Jesse K. Fishman
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    jfishman@hkm.com
    *Attorney for Plaintiff Linda Knutson*